IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| WILLIAM L. WRIGHT, | : |
| Plaintiff, | : |
| v. | : Case No. 7:08-CV-118 (HL) |
| ARIZONA CHEMICAL COMPANY And ARIZONA CHEMICAL COMPANY, LLC, | : |
| Defendants. | : |

## ORDER

This matter is before the Court on the Defendants' Motion for Summary Judgment (Doc. 59) (the "Motion") and Motion to Strike Statement of Material Fact (Doc. 92) (the "Motion to Strike"), and the Joint Motion for Oral Hearing on Defendant's Motion for Summary Judgment (Doc. 115) (the "Hearing Motion"). For the following reasons, all motions are denied.

### I. MOTION TO STRIKE

This Court first must address the Defendants' Motion to Strike. Local Rule 56 states:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

The Defendants argue that, according to Local Rule 56, the Plaintiff violated the local rule when he filed both a Statement of Material Facts as to Which There Exist Genuine Issues to be Tried (Doc. 73) and a Response to the Defendants' Statement of Material Facts (Doc. 67). According to the Defendants' argument, the Plaintiff was only allowed to file a response wherein he responded to each of the Defendants' enumerated facts, not to file his own statement of disputed facts. This argument is based on an incorrect reading of the local rule.

Local Rule 56 clearly allows the respondent to a motion for summary judgment to file two documents: (1) a "separate and concise statement of material facts," and (2) a "[r]esponse . . . to each of the movant's numbered material facts." It would be inequitable to require a respondent to rely on a defendant's self-serving, carefully selected list of facts in responding to a motion for summary judgment, and would undermine the spirit of the law of summary judgment, which requires this Court to construe facts in favor of the respondent.

Defendants' Motion to Strike (Doc. 92) is denied. This Court will not strike Plaintiff's Statement of Material Facts as to Which There Exist Genuine Issues to be Tried (Doc. 73).

## II. MOTION FOR SUMMARY JUDGMENT

**A.     Factual Background**

2

The Arizona Chemical Company ("ACC") is the owner of a facility in Valdosta, Georgia (the "Facility") that manufactures resins. Prior to the events giving rise to this action, ACC's Facility used open conveyors (i.e., uncovered conveyors) to transport the resin through the Facility and into the bagging room. In the process of transport along this conveyor, dust from the resin would dispense into the air and throughout the Facility. The dust from this resin was combustible.

In May 2006, ACC decided to shut down the Facility to perform cleaning and maintenance, and also to replace the open conveyor with an enclosed conveyor. ACC hired contractors to help with various projects during the shut-down. In particular, ACC hired Tesecon to demolish the old, open conveyor. Tesecon was to use some of its own employees on the project, but would need to hire others specifically for this project. The Plaintiff was one of the latter employees.

On the second day of the project, shortly after 5:00 p.m., a flash fire occurred above the Motor Control Center (the "MCC") room. The Plaintiff learned of this fire when he arrived for his 7:00 p.m. shift.[1] Immediately after the fire, ACC ordered Tesecon to halt all "hot" work while ACC employees cleaned and inspected the area. After this work had been performed, an ACC employee informed Tesecon that ACC had cleaned

---

[1] In order to perform the work in the amount of time required by ACC, Tesecon employees worked 24 hours a day. The Plaintiff in this case worked the night shift.

3

and inspected the area, and had tested for explosion hazards. An ACC employee issued Tesecon a Hot Work Permit (an "HWP"), a document that must be issued by an ACC employee before any work on the project that would cause a spark or a flame could be performed, thus allowing Tesecon employees to return to work.

After receiving the HWP, the Plaintiff began working with other Tesecon employees in the area above the MCC room to remove a section of the conveyor. The Plaintiff was using an oxygen acetylene torch to cut the conveyor into sections. He would then maneuver the cut section to the floor. The Plaintiff was standing on a bank of conduit about four to five feet above the roof of the MCC room, but was not wearing a safety harness. After the Plaintiff had made the final cut on the section of the conveyor he was working on, the conveyor shifted and dust began to fall. The dust came into contact with the flame of the Plaintiff's torch, causing another flash fire. The Plaintiff tried to escape the fire, but tripped and fell onto the roof of the MCC room and was injured as a result.

B.   Discussion

1.   *Georgia Law Applies*

4

The Court agrees with the parties that this Court should apply Georgia substantive law in this case.  See Cambridge Mut. Ins. Co. v. City of Claxton, 720 f.2d 1230, 1232 (11th Cir. 1983).

2.   *Summary Judgment Standard*

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law.  Federal Rule of Civil Procedure 56(c).  In ruling on a defendant's motion for summary judgment, the Court takes the facts in the light most favorable to the plaintiff.  Stanley v. City of Dalton, 219 F.3d 1280, 1287 (11th Cir. 2000).  The Court may not, however, make credibility determinations or weigh the evidence.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986).

3..   *Defendants' Duty to the Plaintiff*

The Defendants' main argument in favor of summary judgment is that ACC did not owe the duties of landowner to invitee to the Plaintiff because he was an independent contractor and ACC had relinquished possession of the premises.  For the below discussion, it is assumed that Tesecon was an independent contractor.

As the owner of the Facility, ACC "is liable in damages to invitees who come upon [its] land for injuries occasioned by [its] failure to exercise ordinary care in keeping the premises safe."  West v. Briggs & Stratton

5

Corp., 244 Ga. App. 840, 844, 536 S.E.2d 828, 832 (2000).  Ordinarily, because independent contractors are invitees, ACC would owe a duty to Tesecon and its employees.  Id.  If, however, ACC had surrendered "full possession and complete control" over the facility, or even over the bagging room where the Plaintiff was injured, then it would not be liable to the Plaintiff because it would not have owed him the duties normally owed to invitees.  Id. at 844-45, 536 S.E.2d at 832.  As long as two conditions exist, ACC would not owe the duties of a landowner to invitee to the Plaintiff:  (1) if ACC had "relinquished possession of the premises, in the whole or in part," and (2) if ACC did not have the right to control and direct the work done, and did not actually control or direct the work.  Id. at 845, 536 S.E.2d at 832.

The first issue, then, is whether ACC relinquished possession of the premises to Tesecon.  Possession means "having personal charge of or exercising rights of management or control over the property in question."  Id. at 845, 536 S.E.2d at 833.  "[C]ustody and control are the commonly accepted and generally understood incidents of possession."  Id.  Particularly, "possession implies the ability to control access to the premises and to exclude others therefrom."  Id.  Reviewing the undisputed facts, as set out by both parties in their statements of facts, it does not appear, to an extent sufficient to satisfy summary judgment standards, that ACC relinquished possession of the Facility or the bagging room.

6

Tesecon employees could only access the Facility through a locked gate. The workers would have to use a telephone, located by the gate, to call the ACC control room and ask to be admitted. Once admitted, the Tesecon employees had to sign in and out. According to its written procedures, ACC reserved the right to search Tesecon employees, and it specifically stated in the procedures that "[t]oolboxes and lunchboxes may be checked at random, and will be checked prior to be[ing] allowed to leave the site." While working, Tesecon employess were confined to their assigned areas. ACC's contention that "Tesecon employees could choose which area within the Bagging Room to be working on and were free to work on any part of the area where the project was being worked on," is insufficient to prove that ACC relinquished possession.

What is more, and this point shows that ACC relinquished neither possession nor control, Tesecon employees had to receive authorization from ACC's employees in order to do certain kinds of work. In order to do work that would create a spark or a flame, which was a lot of what the Plaintiff's work involved as he was demolishing the conveyor with a torch, Tesecon's employees had to secure a Hot Work Permit. The ACC employees were in charge of issuing HWPs. The ACC employee issuing the HWP answered a checklist of 19 questions and inspected the area prior to issuing the permit. The Tesecon employee was then required to sign the

7

permit, acknowledging its contents, and encouraged to perform his own inspection of the premises.

Considering these facts in a light most favorable to the Plaintiff, the Defendants cannot show with the evidence available that ACC relinquished possession and control of the premises.  Thus, assuming for the sake of the Motion that Tesecon was an independent contractor, ACC cannot show that the Plaintiff was not ACC's invitee to whom ACC owed certain duties. This issue, as well as others, particularly whether ACC breached any duties it may have owed to the Plaintiff, must be await trial for determination.

4.   *Demolition Work*

ACC also argues that the Plaintiff cannot recover against the Defendants because the Plaintiff was performing demolition work.  But this argument is not properly made.

It is true, as the Defendants argue, that there is an exception to the landowner's duty to invitees that applies "'where the injured servant was hired for the express purpose of assisting in the repair, demolition, or alteration of some instrumentality . . ., and the unsafe conditions from which the injury resulted arose from or were incidental to the work undertaken by him." Long Leaf Indus., Inc. v. Mitchell, 252 Ga. App. 343, 344, 556 S.E.2d 242, 243 (2001).  But, as the court of appeals in Long Leaf wrote, the exception ". . . presupposes that the involved risk is incidental to

8

the work performed and, therefore, is known to, and assumed by, the worker." Id. at 344, 556 S.E.2d at 244.

For instance, in Howell v. Farmers Peanut Market of Sowega, Inc., 212 Ga. App. 610, 442 S.E.2d 904 (1994), the plaintiff was injured while installing a motor on the top of a grain elevator. The plaintiff was injured by the hoisting of the motor. The plaintiff arrived at the scene of the accident as the motor was being hoisted and he shouted for the men moving the motor to stop because the motor was stuck. He knew that this presented a danger because the "strong arm" holding the motor might break and the motor might drop. The plaintiff climbed to adjust the motor and "when at [the plaintiff's] direction the motor was being raised again, it fell and struck [the plaintiff.]" Id. at 611, 442 S.E.2d at 904. In his deposition, the plaintiff stated that he had removed over one-hundred motors and was aware of the dangers inherent in the process.

In other words, the plaintiff's injury "was received from a danger that would ordinarily and naturally exist in doing the work which [he] was employed to perform." Id. Such is not the case here, or at least, this is not what the evidence would indicate. The critical distinction between Howell and this case is that the injury in Howell was caused in the ordinary process of installing the motor and was instigated by no outside factors, whereas here, the demolition of the conveyor did not cause the Plaintiff's injuries, it was the flash fire caused by settling dust, a condition that the

9

evidence indicates is unique, insofar as the Plaintiff is concerned, to the ACC project.

Additionally, the plaintiff in Howell was well aware of the risks of installing motors; he knew the equipment and knew the likely consequences of such a procedure gone wrong. Here, dust caught fire, which is outside of normal expectations. Aside from the other inequities of limiting the Defendants' liability due to the cause of the incident, the dust catching fire is not a risk this Plaintiff would be aware of or should expect, no matter how many conveyors the Plaintiff demolished.

That the Plaintiff's job involved an element of danger will not shield the Defendants from liability in this case.

5. *Assumption of the risk*

The question of whether the Plaintiff "assumed the risk of his injury is a jury question that should not be decided by summary adjudication unless the defense is conclusively established by plain, palpable and undisputed evidence." Prillaman v. Sark, 255 Ga. App. 781, 782, 567 S.E.2d 76, 77 (2002). Whether the Plaintiff assumed the risk depends on his actual knowledge. Id. "The knowledge requirement does not refer to a comprehension of general, non-specific risks. Rather, the knowledge that a plaintiff who assumes the risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury." Id. The Defendants have not presented

10

sufficient evidence to allow the Court to make a determination, at summary judgment, that they are entitled to this defense.

### III. HEARING MOTION

The Court notes that the parties have filed a Joint Motion for Oral Hearing. However, this motion was submitted to the Court at a time when the Court had already concluded the disposition of the Motion for Summary Judgment. Therefore, the Hearing Motion is denied.

### IV. CONCLUSION

For the foregoing reasons, the Motion to Strike (Doc. 92), the Motion for Summary Judgment (Doc. 59) and the Hearing Motion (Doc. 115) are denied.

**SO ORDERED**, this the 4th day of March, 2010.

                                    *s/  Hugh Lawson*
                                    HUGH LAWSON, SENIOR JUDGE

jch

11